UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAMES SAVARESE,                                            )
                                                           )
                              Plaintiff,                   )     **COMPLAINT**
                                                           )
        -against-                                          )     **JURY TRIAL DEMANDED**
                                                           )
THE CITY OF NEW YORK; NYPD TRAFFIC                         )
SUPERVISOR MOHAMMAD ISLAM, Shield No.                      )
403 (previously an NYPD Traffic Agent with Shield          )
No. 3723); NYPD POLICE OFFICER WILLIAM                     )
GRIESHABER, Shield No. 10503; NYPD                         )
SERGEANT KEITH BURKITT, Shield No. 1556;                   )
NYPD CAPTAIN DANIEL MAHONEY (retired);                     )
NYPD POLICE OFFICER MICHAEL                                )
FRANSSON, Shield No. 19633; NYPD TRAFFIC                   )
SUPERVISOR DEBORAH YOUMANS (retired);                      )
JOHN DOES; and RICHARD ROES,                               )
                                                           )
                              Defendants.                  )
------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiff JAMES SAVARESE seeks relief for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United States Constitution, including its First, Fourth and Fourteenth Amendments, and by the laws and Constitution of the State of New York.  Plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and such other and further relief as this court deems equitable and just.

**JURISDICTION**

2. This action is brought pursuant to the Constitution of the United States, including its First, Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983. Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

**JURY TRIAL DEMANDED**

3. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

**VENUE**

4. Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

**PARTIES**

5. Plaintiff was at all times relevant herein a resident of the State of New York.

6. Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

7. Defendants NYPD TRAFFIC SUPERVISOR MOHAMMAD ISLAM, NYPD POLICE OFFICER WILLIAM GRIESHABER, NYPD SERGEANT KEITH BURKITT, NYPD

CAPTAIN DANIEL MAHONEY (retired), NYPD POLICE OFFICER MICHAEL FRANSSON, NYPD TRAFFIC SUPERVISOR DEBORAH YOUMANS (retired), and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of defendant THE CITY OF NEW YORK.  Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants NYPD TRAFFIC SUPERVISOR MOHAMMAD ISLAM, NYPD POLICE OFFICER WILLIAM GRIESHABER, NYPD SERGEANT KEITH BURKITT, NYPD CAPTAIN DANIEL MAHONEY (retired), NYPD POLICE OFFICER MICHAEL FRANSSON, NYPD TRAFFIC SUPERVISOR DEBORAH YOUMANS (retired), and JOHN DOES are sued individually and in their official capacity.

8. Defendants ISLAM, BURKITT, MAHONEY, YOUMANS, and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of subordinate members of the police department under their command.  Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF

NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  ISLAM, BURKITT, MAHONEY, YOUMANS, and RICHARD ROES are sued individually and in their official capacity.

## STATEMENT OF FACTS

9. Plaintiff until his recent retirement worked for approximately three decades as a firefighter for the New York City Fire Department (FDNY) in the Rockaways.

10. At approximately 3 or 4 p.m. on July 1, 2015 Plaintiff was off duty, and was driving his car near the intersection of Cronston Avenue and Beach 129th Street in the Rockaways.

11. Plaintiff noticed that Defendant ISLAM'S NYPD traffic vehicle was parked in front of a fire hydrant.

12. Traffic agents parking in front of fire hydrants is a recurring problem in the Rockaways, that Plaintiff had observed on a number of prior occasions.

13. Plaintiff also saw an individual named Shaun Reen present at the location, who Plaintiff knew because Mr. Reen also had worked for decades for the FDNY in the Rockaways, retiring as a Chief.

14. Plaintiff observed Mr. Reen and Defendant ISLAM speaking with each other on the sidewalk in a somewhat heated fashion.

15. Plaintiff inquired of Mr. Reen, in sum and substance, whether he was all right.

16. Mr. Reen made a reference to Defendant ISLAM being parked in front of the fire

hydrant and having accused Mr. Reen of assaulting him, and Mr. Reen asked Plaintiff, in sum and substance, if he would stop his car at the location.

17. Plaintiff did not observe Mr. Reen do anything remotely violent toward Defendant ISLAM.

18. On information and belief Defendant ISLAM baldly lied when he accused Mr. Reen of assaulting him.

19. Plaintiff parked his car, and walked over to where Mr. Reen and Defendant ISLAM were.

20. Plaintiff observed Mr. Reen and Defendant ISLAM arguing about Defendant ISLAM being parking in front of the fire hydrant, and told Mr. Reen, in sum and substance, not to waste his time, as NYPD Traffic agents routinely park in front of hydrants.

21. Mr. Reen also told Plaintiff that his sister had called the police concerning what was happening with Defendant ISLAM.

22. Plaintiff also told Defendant ISLAM that he was not permitted to park his vehicle in front of the hydrant.

23. Defendant ISLAM at some point went and got into his vehicle for a period of time.

24. While Defendant ISLAM was inside of his NYPD traffic vehicle, Plaintiff took some photographs (which have since been deleted) of Defendant ISLAM's vehicle parked in front of the fire hydrant.

25. Plaintiff at one point briefly stood behind Defendant ISLAM's car in conjunction with taking photographs of Defendant ISLAM's car being parking in front of the fire hydrant.

26. Plaintiff's presence behind Defendant ISLAM's car did nothing to impede

5

Defendant ISLAM from moving his car.

27. Plaintiff, in fact, moved out of Defendant ISLAM's way at one point when Defendant ISLAM backed his car up at Plaintiff, and Plaintiff's reaction was to get out of the way of the car by moving to the sidewalk.

28. Another member of the FDNY - a Lieutenant - also arrived at the scene, and knocked on Defendant ISLAM's car window and told him that he was not permitted to park in front of a fire hydrant.

29. Defendant ISLAM told this FDNY Lieutenant, in sum and substance, that he did not have to listen to him and closed his car window to terminate the conversation.

30. Neither Plaintiff nor Mr. Reen impeded Defendant ISLAM from leaving the scene.

31. Two JOHN DOES police officers – on information and belief Defendants GRIESHABER and FRANSSON – arrived at the scene and spoke with Defendant ISLAM and Mr. Reen.

32. These police officers also spoke with Plaintiff at the scene, and Plaintiff told them what he had heard and observed.

33. Plaintiff heard Defendant ISLAM tell one of these JOHN DOE police officers that Mr. Reen had scratched his NYPD car with Mr. Reen's bicycle's handlebar, and show the police something on his car.

34. On information and belief Defendant ISLAM baldly lied when he told the police that Mr. Reen's bicycle handlebar had scratched his NYPD car.

35. On information and belief Defendant ISLAM scratched his own NYPD car in an effort to falsely incriminate Mr. Reen.

6

36. Plaintiff also heard Defendant ISLAM tell one of the police officers that Mr. Reen had assaulted him by touching his elbow.

37. One of the police officers told Defendant ISLAM that that was not an assault.

38. One of the police officers told Plaintiff that Defendant ISLAM was going to call a supervisor, and that the police officers were going to call a supervisor as well.

39. Defendant ISLAM also said something to the police officers about the fact that Plaintiff was briefly standing behind his car.

40. Defendant ISLAM never asked Plaintiff (or Mr. Reen) to move.

41. Defendant ISLAM was able to leave the scene at any point without impediment.

42. Defendant ISLAM at no point attempted to leave the scene.

43. Plaintiff explained to the Officers that he took a few pictures from behind Defendant ISLAM's car.

44. The police officers asked Plaintiff if he had blocked Defendant ISLAM from leaving the scene in his car.

45. Plaintiff told them that he had not blocked Defendant ISLAM from leaving the scene in his car.

46. Plaintiff asked one of the police officers if he could leave and the police officer said that Plaintiff was not permitted to leave.

47. The police officers' supervisor – on information and belief Defendant BURKITT – arrived on the scene and spoke with the police officers.

48. Plaintiff also told the police officer's supervisor what he has seen and observed, and, on information and belief, the police officer's supervisor also spoke with Mr. Reen and

Defendant ISLAM.

49. On information and belief, a woman at the scene told Defendant BURKITT and the police officers that Defendant ISLAM had scratched his own NYPD car in an effort to falsely incriminate Mr. Reen.

50. Defendant ISLAM's supervisor – on information and belief Defendant YOUMANS – also arrived at the scene, and immediately went over to Defendant ISLAM and spoke with him.

51. After she spoke with Defendant ISLAM, Defendant ISLAM's supervisor then spoke with the police at the scene.

52. Defendant ISLAM's supervisor did not speak with Plaintiff.

53. On information and belief, Defendant ISLAM's supervisor also did not speak with Mr. Reen.

54. After Defendant ISLAM's supervisor spoke with the police at the scene one of the police officers told Plaintiff that he had to go to the police precinct.

55. Plaintiff asked if he had to call his work to inform them that he would not be coming to work that night, and the police officers told him that was indeed the situation.

56. The police officers also told Plaintiff that he could not come to the precinct in his own car, but instead had to go in a police car.

57. Plaintiff informed the police officers that he did not want to go to the precinct, but was told by the police officers that he had to.

58. Plaintiff and Mr. Reen were brought to the local precinct – on information and belief the NYPD 100th Precinct - in a police car by the police officers.

59. Once at the precinct Plaintiff and Mr. Reen were taken into a room by the police officers, who remained with them there (at least for part of the time).

60. Shortly thereafter the police officers' supervisor from the scene and a JOHN DOE Captain – on information and belief Defendant MAHONEY – also entered the room.

61. The Captain asked Plaintiff what had happened at the scene, and Plaintiff told the Captain, in sum and substance, that Plaintiff had basically just went behind Defendant ISLAM's car and took a couple of pictures.

62. Upon hearing this the Captain's demeanor darkened, and he looked at Plaintiff and got up, and walked out of the room.

63. Shortly thereafter the Captain came back in the room and asked Plaintiff, in sum and substance, if Plaintiff had heard the bad news.

64. Plaintiff inquired as to what bad news the Captain was referring to, and the Captain told Plaintiff, in sum and substance, that Plaintiff and Mr. Reen would be going through the system.

65. Plaintiff said, in sum and substance, that that was bullshit, and the Captain told Plaintiff, in sum and substance, that next time he should show a little respect and not take any pictures.

66. Plaintiff responded, in sum and substance, by telling the Captain that next time Defendant ISLAM should show a little respect for the people living in the neighborhood and not park in front of a fire hydrant.

67. Plaintiff also at that juncture told the Captain that the Captain should go fuck himself.

9

68. The Captain then walked out of the room again.

69. The police officers then took Plaintiff and Mr. Reen from the room to a cell in the precinct.

70. Plaintiff's belt and shoelaces were taken from him, and he was processed at the precinct (including being fingerprinted and having his mugshot taken).

71. On information and belief the decision to not release Plaintiff from the precinct without charges, and instead to book him through to arraignment and lodge false charges against him, was made by the Captain.

72. Later that evening Plaintiff and Mr. Reen were handcuffed and transferred to Queens Central Booking.

73. Prior to leaving the precinct Plaintiff saw Defendant ISLAM present there.

74. Plaintiff and Mr. Reen were placed in a series of cells at Central Booking.

75. At Central Booking Plaintiff was processed again, including being fingerprinted again and being subjected to a retina scan.

76. Plaintiff and Mr. Reen were not arraigned that night.

77. Plaintiff was informed by a corrections officer that Plaintiff's and Mr. Reen's paperwork (which was necessary in order for them to be arraigned) had not arrived at Central Booking.

78. On information and belief, Plaintiff's and Mr. Reen's paperwork was purposely delayed by the Captain and the other Defendants so that Plaintiff and Mr. Reen would have to spend the night in Central Booking.

79. On information and belief, Defendants YOUMANS, ISLAM, and MAHONEY

wanted Plaintiff and Mr. Reen to be falsely arrested (and to have to spend as much time as possible in custody prior to arraignment) and falsely charged because of their criticisms of Defendant ISLAM for parking in front of the fire hydrant, and because Plaintiff took photographs of Defendant ISLAM's car in front of the hydrant, and they and the other Defendants conspired to accomplish those ends.

80. Plaintiff was extremely cold throughout the long night he spent at Central Booking, and was not given a blanket, or any food or water.

81. On the late morning of July 2, 2015 Plaintiff and Mr. Reen were arraigned.

82. Plaintiff was falsely charged with one count of violation of Penal Law § 195.05 (Obstructing Governmental Administration in the Second Degree).

83. Defendant GRIESHABER was the deponent on the Criminal Court Complaint that was lodged against Plaintiff, and falsely attested, under penalty of perjury, *inter alia*, that he was informed by Defendant ISLAM that Defendant ISLAM observed Mr. Reen in front of his car, and Plaintiff behind his car, that Defendant ISLAM asked Plaintiff and Mr. Reen to please move and that Plaintiff and Mr. Reen refused to move.

84. Defendant GRIESHABER also attests in the Criminal Complaint that Defendant ISLAM observed Plaintiff with his phone in his hand behind Defendant ISLAM's vehicle.

85. As set forth, *supra*, Plaintiff and Mr. Reen at no point prevented Defendant ISLAM from leaving the scene.

86. Plaintiff at no point was asked by Defendant ISLAM to move, and never refused to move.

87. Plaintiff was also only briefly behind Defendant ISLAM's car in conjunction with

lawfully exercising his First Amendment right to photograph Defendant ISLAM's car parked in front of the fire hydrant, and that did not impede Defendant ISLAM from leaving at any point.

88. Plaintiff in fact moved out of the way of Defendant ISLAM's car when Defendant ISLAM at one point backed his car up at Plaintiff.

89. Defendant ISLAM on September 2, 2015 executed a supporting deposition, falsely attesting, under penalty of perjury, that the false allegations lodged against Plaintiff in a second Criminal Court Complaint were true.

90. That second Criminal Court Complaint also charges Plaintiff with Obstruction of Governmental Administration in the Second Degree, and states that it is was executed by Defendant ISLAM (which appears to have been a typographical error, as it appears to have been signed by Defendant GRIESHABER and should have stated that Defendant GRIESHABER was the deponent), and falsely alleges that the deponent is informed by Defendant ISLAM, *inter alia*, that Plaintiff impeded Defendant ISLAM's ability to move his vehicle when Plaintiff was briefly standing behind his vehicle, and that Defendant ISLAM asked Plaintiff to move and that Plaintiff refused to move, and that Plaintiff and Mr. Reen stood blocking his vehicle from moving for approximately 15 minutes.

91. This second Criminal Court Complaint also notes that Plaintiff (along with Mr. Reen) "were taking pictures of Agent Islam's vehicle."

92. Defendant ISLAM also memorialized his false allegations in an NYPD Traffic Enforcement District H.A.R.M. report that was prepared by a colleague of his, which states, *inter alia*, that Plaintiff and Mr. Reen prevented Defendant ISLAM from leaving the area.

93. Defendant GRIESHABER is also listed as the reporting / arresting officer on the

NYPD Complaint Report and NYPD Arrest Report completed in conjunction with Plaintiff's arrest, and also states that Defendant ISLAM falsely accused Plaintiff and Mr. Reen of preventing him from leaving in his vehicle.

94. Defendant BURKITT is listed as the "Supervisor Approving" on the NYPD Complaint Report and the NYPD Arrest Report.

95. Plaintiff was released on his own recognizance at arraignment.

96. Plaintiff had to return to court thereafter to defend himself against the false charge that had been lodged against him.

97. Plaintiff accepted an adjournment in contemplation (ACD) of dismissal on November 15, 2015, and the false charge against him has been dismissed in its entirety pursuant to that ACD.

98. Defendants' actions were in retaliation for Plaintiff's verbal criticism of Defendant ISLAM and the Captain, and in retaliation for Plaintiff taking photographs of Defendant ISLAM's NYPD car in front of the fire hydrant.

99. The retaliation for photographing Defendant ISLAM's vehicle was in flagrant violation of not only the First Amendment, but also of long-standing internal NYPD written policies and practices (the consistent violation of which has been long-tolerated within the NYPD)

100. In 1977 the City of New York and its then-Police Commissioner entered into a consent decree in the class action Black v. Codd, 73 Civ. 5283 (JNC), which stated, in relevant part, as follow:

> It is stipulated by and between the attorneys for the parties herein that it is the policy of the New York City Police Department and the defendants that when a person (or persons) is detained, stopped or arrested in public areas,

a person or persons not involved in the conduct for which the first person is stopped or arrested may remain in the vicinity of the stop or arrest as an onlooker or onlookers, subject to the safety of the person stopped, the third persons, the general public, and officers of the Police Department, and to provisions of law e.g. P.L. 195.05.

….

In the following provisions, the term "officer" refers to New York City police officers, agents of the defendants:

> 1. A person remaining in the vicinity of a stop or arrest (herein after an "onlooker") shall not be subject to arrest for violation of Penal Law § 195.05 unless the officer has probable cause to believe that a violation of Section 195.05 exists.
>
> 2. None of the following constitute probable cause for arrest or detention of an onlooker unless the safety of officers or other persons is directly endangered or the officer reasonably believes they are endangered or the law is otherwise violated:
>
>> (a) Speech alone, even though crude and vulgar;
>> (b) Requesting and making notes of shield numbers or names of officers;
>> (c) Taking photographs;
>> (d) Remaining in the vicinity of the stop or arrest.
>
> 3. Whenever an onlooker is arrested or taken into custody, the arresting officer shall report the action to the supervisor at the station house or other place where the person is taken….
>
> 4. Defendants shall notify all officers and other employees of the Police Department of the terms of this stipulation by appropriate department order within 60 days of the entry of this order. Such order shall embody the terms of paragraphs l through 3 of this order. Area commanders will be informed that the basis for the said departmental order is the settlement of this litigation and that the terms of this order are part of the departmental order. Area commanders shall inform precinct commanders of the existence of this order.
> ….

>The above provisions of this order shall and the same hereby do constitute the final judgment of this court upon the controversy between defendants, plaintiffs and the plaintiff class.

101.  In response to numerous complaints by members of the press and the public, and various civil rights organizations, concerning the routine violations of the First Amendment and the consent decree in <u>Black v. Codd</u>, the NYPD's Chief of Department – in, on information and belief, the summer of 2014 – issued a "FINEST MESSAGE  General Administrative Information" which reiterated the written policy (the consistent violation of which has been long-tolerated within the NYPD) of the NYPD to be as follows:

>TO:  ALL COMMANDS
>
>RE: RECORDING OF POLICE ACTION BY THE PUBLIC
>
>MEMBERS OF THE SERVICE ARE REMINDED THAT MEMBERS OF THE PUBLIC ARE LEGALLY ALLOWED TO RECORD (BY VIDEO, AUDIO, OR PHOTOGRAPHY) POLICE INTERACTIONS. THESE INTERACTIONS INCLUDE ARREST AND OTHER SITUATIONS. MEMBERS OF THE SERVICE WILL NOT INTERFERE WITH A PERSON'S USE OF RECORDING DEVICES TO RECORD POLICE INTERACTIONS. INTENTIONAL INTERFERENCE SUCH AS BLOCKING OR OBSTRUCTING CAMERAS OR ORDERING THE PERSON TO CEASE CONSTITUTES CENSORSHIP AND ALSO VIOLATES THE FIRST AMENDMENT.
>
>IT SHOULD BE NOTED, HOWEVER, THAT PERSONS MAY NOT INTERFERE WITH POLICE OPERATIONS. MEMBERS, IF APPROPRIATE, SHOULD ADVISE THE PUBLIC NOT TO GET TOO CLOSE AND MAY TAKE ACTION ONLY IF THE PERSON INTERFERES WITH THE OPERATION OR THE SAFETY OF THE MEMBERS OF THE SERVICE OR THE PUBLIC.  HOWEVER, MERE RECORDING OF AN INCIDENT DOES NOT CONSTITUTE INTERFERENCE.  COMMANDING OFFICERS WILL ENSURE THAT THE CONTENTS OF THIS MESSAGE ARE DISSEMINATED TO ALL MEMBERS OF THE SERVICE.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

102. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

103. By their conduct and actions in seizing plaintiff, falsely arresting and imprisoning plaintiff, trespassing upon plaintiff, abusing process against plaintiff, violating rights to due process of plaintiff, fabricating evidence against plaintiff, unreasonably prolonging plaintiff's time in custody, subjecting Plaintiff to unduly harsh conditions of confinement, violating and retaliating for plaintiff's exercise of his rights to free speech and assembly (including but not limited to taking photographs to document misconduct by a member of the NYPD), failing to intercede on behalf of the plaintiff and in failing to protect the plaintiff from the unjustified and unconstitutional treatment he received at the hands of other defendants, and by conspiring against Plaintiff, defendants NYPD TRAFFIC SUPERVISOR MOHAMMAD ISLAM, NYPD POLICE OFFICER WILLIAM GRIESHABER, NYPD SERGEANT KEITH BURKITT, NYPD CAPTAIN DANIEL MAHONEY (retired), NYPD POLICE OFFICER MICHAEL FRANSSON, NYPD TRAFFIC SUPERVISOR DEBORAH YOUMANS (retired), JOHN DOES and RICHARD ROES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, and Fourteenth amendments.

104. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## **SECOND CLAIM**

## **DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

105. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

106. By their conduct in failing to remedy the wrongs committed by their subordinates and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants NYPD TRAFFIC SUPERVISOR MOHAMMAD ISLAM, NYPD SERGEANT KEITH BURKITT, NYPD CAPTAIN DANIEL MAHONEY (retired), , NYPD TRAFFIC SUPERVISOR DEBORAH YOUMANS (retired), and RICHARD ROES caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, and Fourteenth amendments.

107. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## **THIRD CLAIM**

## **LIABILITY OF DEFENDANT THE CITY OF NEW YORK FOR CONSTITUTIONAL VIOLATIONS**

108. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

109. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

110. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

111. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free speech and association in a manner that affronts police officers or is interpreted by police officers as challenging their authority or documenting or reporting their misconduct, including photographing them. These policies, practices, customs,

and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

112. At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had <u>de</u> <u>facto</u> policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through conspiracy and/or the fabrication of false accounts and evidence and/or through "the blue wall of silence." Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

113. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

    a. Compensatory damages;

    b. Punitive damages;

    c. The convening and empaneling of a jury to consider the merits of the claims herein;

    d. Costs and interest and attorney's fees;

    e. Such other and further relief as this court may deem appropriate and equitable.

Dated:	New York, New York
	June 30, 2018

	_____/S/_____
	JEFFREY A. ROTHMAN, Esq.
	315 Broadway, Suite 200
	New York, New York 10007
	(212) 227-2980

	Attorney for Plaintiff