UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES SAVARESE,

                Plaintiff,

– against –

THE CITY OF NEW YORK; NYPD TRAFFIC
SUPERVISOR MOHAMMAD ISLAM, Shield No.
403 (previously an NYPD Traffic Agent with
Shield No. 3723); NYPD POLICE OFFICER
WILLIAM GRIESHABER, Shield No. 10503;
NYPD SERGEANT KEITH BURKITT, Shield No.
1556; NYPD CAPTAIN DANIEL MAHONEY
(retired); NYPD POLICE OFFICER MICHAEL
FRANSSON, Shield no. 19633; NYPD TRAFFIC
SUPERVISOR DEBORAH YOUMANS (retired);
JOHN DOES; and RICHARD ROES,

                Defendants.

**OPINION AND ORDER**

18 Civ. 5956 (ER)

---

Ramos, D.J.:

      James Savarese ("Savarese") brings suit against Defendants City of New York ("the City"), Keith Burkitt, Michael Fransson, William Grieshaber, Mohammed Islam, Daniel Mahoney, Deborah Youmans, Richard Roes, and John Does (collectively, "Defendants") alleging violations of his civil rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and constitutional rights under First, Fourth and Fourteenth Amendment of the U.S. Constitution. (Pl.'s Compl. 1.)

      Before the Court is Defendants' motion to transfer venue to the Eastern District of New York pursuant to 28 U.S.C. § 1404. For reasons discussed below, the Defendants' motion is DENIED.

## I. BACKGROUND

### A. Factual Background

On July 1, 2015, at approximately 3:00 or 4:00 p.m., Savarese, a New York City Fire Department ("FDNY") firefighter and resident of Nassau County, was off duty and near the intersection of Cronston Avenue and Beach 139th Street in the Rockaways, located in Queens County in the Eastern District of New York. (Pl.'s Compl. ¶¶ 10.) It was there that Savarese noticed Mohammad Islam's New York Police Department ("NYPD") traffic vehicle parked in front of a fire hydrant. (Pl.'s Compl. ¶¶ 13-14.) Savarese also observed what appeared to be a heated discussion between Shaun Reen and Islam. (*Id.*) Savarese recognized Reen as a fellow FDNY firefighter and approached the scene. (*Id.*) As Savarese approached, Reen advised him that Defendant Islam was parked in front of a hydrant and had allegedly accused Reen of assault. (*Id.* ¶ 16.) At one point, Savarese purportedly stood behind Islam's vehicle in "conjunction with photographing his vehicle." (*Id.* ¶ 26.) When other NYPD officers arrived on the scene, including NYPD supervisor Keith Burkitt, they began to question Savarese, Reen and Islam about what transpired. (*Id.* ¶ 46.) Savarese requested to leave, but the NYPD officers advised that he would not be permitted to do so. (*Id.* ¶ 46.)

A NYPD supervisor, Deborah Youmans, eventually arrived at the scene. (*Id.* ¶ 47.) Savarese alleges Youmans did not speak to him or Reen about what had transpired. (*Id.* ¶¶ 52-53.) Shortly thereafter, Savarese was instructed by the officers to go with them to the local NYPD precinct. (*Id.* ¶ 54.) Officers informed Savarese that he could not go to the precinct in his car, but instead had to be transported by police.[1] (*Id.* ¶ 56.) Savarese and Reen were then taken to the local precinct in a police vehicle. (*Id.* ¶ 56.) Upon arrival, Savarese and Reen were put in

---

[1] Savarese does not allege if he was handcuffed or told that he was under arrest.

a room and questioned by Captain Daniel Mahoney. [2]  (*Id.* ¶¶ 56, 60.)  Savarese alleges

Mahoney walked out of the room after hearing that Savarese had taken pictures of Islam's

vehicle.  (*Id,* ¶ 62.)  According to Savarese, shortly thereafter, Mahoney returned to the room and

advised them that they would be "going through the system."  (*Id.* ¶ 64.)  Savarese and Reen

were then taken from the room to a cell in the precinct and processed.  (*Id.* ¶ 69.)  Later on that

evening, Savarese and Reen were transported to Queens Central Booking where they were

processed again, and detained overnight.  (*Id.* ¶¶ 72, 75.)  On July 2, 2015, the next morning,

Savarese and Reen were arraigned and charged with violating Penal Law § 195.05, Obstructing

Governmental Administration in the second degree.  (*Id.* ¶¶ 77, 82.)  Savarese was released on

his own recognizance at arraignment.  (*Id.* ¶ 95.)  Thereafter Savarese appeared in court to

defend himself against the charge. [3]  (*Id.* ¶ 96.)  Savarese accepted an adjournment in

contemplation of dismissal on November 15, 2015 and ultimately the charge against him was

dismissed in its entirety. [4]  (*Id.* ¶ 97.)

### B.  Procedural Background

On June 16, 2016, Reen filed a complaint against the City of New York ("the City"),

New York City Police Department ("NYPD") Officers, Islam, Mahoney, Burkitt and William

Grieshaber in the Eastern District of New York.  *Reen v. City of New York*, No. 16 Civ. 3347

(MKB).  The parties engaged in motion practice and discovery was ordered to be completed by

October 2, 2017.  (*Id.*)  After a year and a half of motion practice and discovery, the defendants

---

[2] Savarese alleges that some of the officers that transported him to the precinct remained in the room for part of the time that he was questioned.  (Pl.'s Compl. ¶ 59.)

[3] Savarese does not say how many times he appeared in court to defend himself against the charge.

[4] The charges against Reen were also dismissed on April 27, 2016. *Reen v. City v. New York*, No. 16 Civ. 3347, 2018 WL 4608194, at *5 (S.D.N.Y. Apr. 26, 2019).

in *Reen* moved for summary judgment on January 29, 2018. (Burkitt Mot. Summ. J., ECF No. 44.)

On June 30, 2018, while the *Reen* motion was pending, Savarese filed the instant complaint in this Court, against the same defendants in *Reen*, and adding Officers Michael Fransson, Deborah Youmans, Richard Roes and John Does (collectively, "Defendants"). (Pl.'s Compl. 1.) The City and Fransson were served the summons and complaint on July 17, 2018. (Pl.'s Aff. 1.) Accompanying the service of the summons and complaint, Savarese attached a letter dated July 17, 2018 advising the City that it "may wish to direct this to the attention of [Assistant Corporation Counsel] Jorge Marquez, who is handling a case (*Reen v. City of New York*) in EDNY stemming from the same incident." (Rothman Decl. Opp. Defs.' Motion to Transfer Venue Ex. 1.)

Approximately four months after Savarese filed the instant complaint, on September 25, 2018, the Honorable Margo K. Brodie of the Eastern District of New York granted the defendants' motion for summary judgment in *Reen* as to all claims except the claim against Grieshaber for denial of the right to fair trial. (*Id.*) On October 15, 2018, approximately three weeks after Judge Brodie's decision in *Reen*, the Defendants in the instant case filed a motion to transfer venue from the Southern District to the Eastern District of New York.

In the instant case, the Defendants contend that the transfer to the Eastern District is warranted under 28 U.S.C. § 1404(a), because the events that gave rise to Savarese's claims occurred in the Eastern District and a balance of justice favors transferring the case. (Defs.' Mem. Mot. Change Venue, Dec. 17, 2018 2). Defendants also argue that it is in the interest of judicial efficiency to transfer the case because of the substantial similarities between this case and the *Reen* matter. (*Id.*at 6.) Finally, the Defendants assert that Savarese should have known

venue properly lies in the Eastern District and the choice to file in the Southern District was due to impermissible forum shopping.  (*Id.* at 8.)

## II. LEGAL STANDARD

### A. 1404(a) Motion to Transfer Standard

Title 28 U.S.C. § 1404(a) provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  "The purpose of this provision is to 'prevent waste of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Tillery v. NYS Office of Alcoholism & Substance Abuse Servs.*, No. 13 Civ. 0035 (CM), 2013 WL 6405326, at *3 (S.D.N.Y. 2013) (quoting *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 372 (S.D.N.Y. 2006)).  "The statute gives the district court wide discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

Section 1404(a) allows a court to transfer a civil action to the more convenient district court if the action presents issues and requires witnesses that make one district more convenient than another.  *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 248 (E.D.N.Y. 2012) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  When determining whether to transfer a case from one judicial district to another, the Court first examines whether the case could have been brought in the transferee forum.  *Pence v. GEE Grp., Inc.*, 236 F. Supp. 3d 843, 849 (S.D.N.Y. 2017); *see also ICICI Bank, Ltd. v. Essar Global Fund Ltd.*, 565 B.R. 241, 250 (S.D.N.Y. 2017); *Herbert Ltd. Pship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004); *In Re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998).  If

the Court determines that the case could have been brought in the proposed transferee forum, the Court then looks to whether the transfer is appropriate. *Paysafe Holdings UK Ltd. v. Accruit, LLC*, No. 18 Civ. 75 (ER), 2019 WL 1115054, at *4 (S.D.N.Y. Mar. 11, 2019) (*citing Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 291-92 (S.D.N.Y. 2018)).

To determine the appropriateness of the transfer, the Court balances several factors, including:

> (1) plaintiff's choice of forum; (2) the convenience to witnesses, (3) the location of relevant documents and ease of access to sources of proof, (4) the convenience of parties to the suit, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, (9) trial efficiency, and (10) the interest of justice, based on the totality of circumstances.

*Id.*; s*ee also Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, No. 14 Civ. 1936 (ER), 2015 WL 1433320, at *7 (S.D.N.Y. Mar. 30, 2015) (quoting *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 304 (S.D.N.Y.2012)). The foregoing factors are not exhaustive, and no one factor is dispositive as each factor is weighed relative to particularities of each case. *Casey*, 338 F. Supp. 3d at 292 (*quoting Winter v. Am. Inst. of Med. Sci. & Edu.*, 242 F. Supp. 3d 268, 213 (S.D.N.Y. 2017)); *Paysafe*, 2019 WL 1115054, at *4.

The moving party has the burden to establish that the transfer of venue is proper. *Casey*, 338 F. Supp. 3d at 292; *see also Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F. Supp. 955, 962 (S.D.N.Y. 1995); *Time Products v. J. Tiras Classic Handbags, Inc.*, No. 93 Civ. 7856 (CSH), 1994 WL 363930, at *12 (S.D.N.Y. Jul. 13, 1994). A defendant seeking to transfer venue must establish that transfer is appropriate by clear and convincing evidence. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.,* 599 F.3d 110, 114 (2d Cir. 2010) ("the party requesting transfer carries the burden of making out a strong case. . . [for] district courts [to] . . . exercise discretion

to grant a transfer"); *see also Argosy Capital Group, III, L.P. v. Triangle Capital Corp.*, No. 16 Civ. 9845 (ER), 2019 WL 140730, at *5 (S.D.N.Y. Jan. 9, 2019); *Cont'l Cas. Co. v. Hopeman Bros. Inc.,* No. 17 Civ. 00688, 2018 WL 1581987, *at 9 (S.D.N.Y. Mar. 27, 2018); *Douglas v. Syracuse Univ. Coll. of Law*, No. 94 Civ. 9195 (LAP), 1995 WL 555693 at *1 (S.D.N.Y. Sept. 18, 1995).

## III. DISCUSSION

In consideration of the Defendants motion to transfer venue, the Court will first examine whether venue is proper in the Southern District of New York. Then, the Court will turn to examine if the transferee forum, the Eastern District of New York, is proper. *See Paysafe*, 2019 WL 1115054, at *4. Finally the Court will determine if it is in the interest of justice to transfer this case to the Eastern District of New York. *See Ritchie*, 2015 WL 1433320, at *7.

### A. Venue in this Court pursuant to 28 U.S.C. § 1391(b)(1)

Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper here in the Southern District of New York because "[a] civil claim may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." The Defendants in this case include the City of New York and its agents, all residing in the State of New York. Because the City of New York "resides" in the Southern District of New York, pursuant to §1391(b)(1), a suit can be brought against all the Defendants in the Southern District. Thus, the Southern District is proper venue to litigate this matter.

### B. Venue in the Transferee Court Pursuant to 28 U.S.C. § 1391(b)(2)

Under 28 U.S.C. § 1391(b)(2), venue is proper in a "judicial district which a substantial part of the events . . . giving rise to the claim occurred." The claim arose from events that occurred entirely in Queens County, within the Eastern District of New York. It is undisputed

that this claim could have been filed in the Eastern District of New York. Since the Court finds that the Eastern District of New York is also proper venue it will consider next whether it is in the interest of justice to transfer the case.

### C. Factors Against Transfer

a. Plaintiff's choice of forum

"The plaintiff's choice of forum should rarely be disturbed" unless the balance of justice requires a move in favor of the defendant. *Leslie v. City of New York, et al.*, No. 12 Civ. 849 (KBF), 2012 WL 1744842 at *2 (S.D.N.Y May 15, 2012) (*quoting D.H. Blair & Co. v. Gottdiener*, 462 F. 3d 95, 107 (2d Cir. 2006)); *see also Habrout v. City of New York*, 143 F. Supp. 2d 399, 401 (S.D.N.Y. 2001). While courts give deference to a plaintiff's choice of forum in deciding a transfer motion, the plaintiff's choice of forum is not always determinative. *Larew v. Larew*, No. 11 Civ. 5771 (BSJ) (GWG), 2012 WL 87616 at *3 (S.D.N.Y. Jan. 10, 2012). Less deference is given to a plaintiff's choice of forum when the suit is brought in a district where the plaintiff does not reside. *Id. (citing Arce v. City of New York,* No. 08 Civ. 3871 (JSR), 2008 WL 2774447, at *1 (S.D.N.Y. July, 16, 2008); *Habrout*, 143 F. Supp. 2d at 401. Additionally, a plaintiff's choice of forum is given less deference when "it appears that a . . . plaintiff's choice . . . was motivated by forum-shopping reasons." *Iragorri v. United Techs. Corp.*, 274 F. 3d 65 (2d Cir. Dec. 4, 2001). Nevertheless, a plaintiff's "choice of forum should . . . not be disturbed unless the balance of factors weighs in favor of a transfer." *See Habrout*, 143 F. Supp. 2d at 401.

Here, the Defendants assert, based on *Legrand v. City of New York, No. 09 Civ. 9670 (DLC), 2010 WL 742584, at *3 (S.D.N.Y. Mar. 3, 2010)*, that Savarese's choice to file suit in the Southern District rather than the Eastern District, where Savarese resides and where the events occurred, "reveals impermissible forum shopping." (Def. Mem. Supp. Transfer of Venue at 5.)

In *Legrand*, as in the instant case, the plaintiff chose to file suit in the Southern District of New York even though the events giving rise to the cause of action took place, and the plaintiff resided, in the Eastern District. *Legrand*, 2010 WL 742584, at *3 (S.D.N.Y. Mar. 3, 2010). The witnesses in *Legrand*, NYPD officers, were assigned to work in the Eastern district of New York. *Id.* In addition to having little connection to the Southern District, the plaintiff proffered no reason as to why litigating in the Southern District was even convenient for any of the parties in the case. *Id.* The court inferred impermissible forum shopping motivated the plaintiff's choice to litigate in the Southern rather than the Eastern District. *Id.* The Court made such inference based on the 'forum rule' which provides that attorney's fees should be based on the "hourly rates employed in the district in which the reviewing court sits." *Id.* Because the prevailing attorney's fees were higher in the Southern District than in the Eastern District, absent any other apparent motivation, the Court held it to be the likely motivation behind the plaintiff's choice. *Legrand*, 2010 WL 742584 at *3 (citing *Simmons v. NYC Transit Auth.*, 575 F. 3d 170, 174 (2d Cir. 2009). The Court granted the defendants motion to transfer to the Eastern District based on the totality of the circumstances, giving little to no deference to Plaintiff's choice of forum. *Id.* at *3-4.

Defendants make two arguments in support of their assertion that Savarese engaged in impermissible forum shopping. First, the Defendants contend that Savarese chose to "strategically" delay filing the complaint until one day before the statute of limitations was to run because he was awaiting the outcome of the *Reen* case. (Defs.' Reply Mem. Supp. Defs.' Mot. Transfer Venue 6.) Second, that Savarese filed in the Southern District in pursuit of higher attorney's fees.

As to the first argument, The Court notes that it is wholly unremarkable for plaintiffs in civil rights cases to file complaints at or near the end of the statutory period. As to the second argument, Savarese's counsel asserts that his hourly rate would be the same regardless of whether the case is litigated in the Southern or Eastern District. *See* Pl.'s Opp. Defs.' Mot. Transfer Venue 3-4 ("[p]laintiff's counsel whose office is in the Southern District, who files in the Southern District, and is involuntarily transferred to the Eastern District is in all likelihood still entitled to bill for his or her time at his or her normal (Southern District rate) in any event").

In addition, Savarese states that he chose to litigate in the Southern District because of legitimate concerns about convenience and factors not involving attorney's fees. Not only is the New York City Law Department located in the Southern District, Defendants Fransson and Grieshaber work in the Southern District. (Pl.'s Mem. Opp. Defs.' Mot Change Venue 4.) Burkitt is also assigned to work at NYPD headquarters in the Southern District and retired Defendants Mahoney and Youmans were served at NYPD headquarters in the Southern District. (*Id.*) Savarese asserts that all depositions are likely to occur either at the New York City Law Department or his counsel's office in the Southern District.

The Court is not persuaded by the Defendants' contention nor does the Court make the inference made in *Legrand* that the forum rule motivated Savarese's choice to file in the Southern District of New York. The Court gives Savarese less deference in his choice of forum because he is a resident of Nassau County in the Eastern District, and is not a resident of the Southern District. *See id.* However, Savarese's choice of forum does not reach the lowest level of deference held in *Legrand* because the Defendants have not provided sufficient reason to question Savarese's rationale for filing the case in the Southern District. *See Arce*, 2008 WL 2774447, at *1.

The Defendants provide almost no response to the assertion made by Savarese that forum in the Southern District is actually convenient for the Defendants and make no showing that they are significantly burdened to disturb Savarese's choice of forum. *See also Aetna Cas. & Sur. Co. v. Manshul Const. Corp.,* No. 95 Civ. 3994 (LMM), 1997 WL 214946, at *11 (S.D.N.Y. Apr. 29, 1997). Instead, Defendants question to Savarese's motivation by noting it is unlikely that counsel would place the convenience of individual defendant officers over that of his own client who resides in the Eastern District. (*Id.*)

Conversely, Savarese asserts that the Defendants are the ones "engaged in the most transparent form of improper forum shopping" because they moved to transfer the case only after receiving a favorable outcome in the District Court in *Reen*, further distinguishing the case from *Legrand*. (Pl.'s Mem. Opp. Defs.' Mot Change Venue 5.) Savarese points out that Defendants were on notice when served with this complaint on July 17, 2018, that Reen's suit arising from the same set of facts and filed two years prior, was pending in the Eastern District. Approximately four months passed without any objection to venue by the Defendants. On September 25, 2018, the defendants in the *Reen* case were granted summary judgment. Thus, it was four months after Defendants' were served with the instant complaint but only a couple weeks after the *Reen* decision that the Defendants moved to transfer venue on October 15, 2018.

The Court does not reach any conclusion as to the motivation behind the Defendants' choice to delay a transfer request until after a favorable decision was reached in the Eastern District. Nor does this Court reach any conclusions as to the motivation behind Savarese's choice to file the complaint against the Defendants one day before the statute of limitations was to run. Even still, if the Court were to determine that both parties engaged in forum shopping, as they have both alleged, the Court would merely weigh this factor neutrally. *See Lehman Bros.*

*Holdings, Inc. v. Hometrust Mortg. Co.*, No. 15 Civ. 204 (PAE), 2015 WL 891663, at *4

(S.D.N.Y. 2015). Here, the Court finds that Savarese exercised his privilege to bring an action in

a proper forum. *See Travelers Indem. Co. v. Monsanto Co.*, 692 F. Supp. 90, 92 (D. Conn.

1988). The Defendants have not met their burden by clear and convincing evidence that forum

shopping motivated Savarese's decision to file the case in the Southern District. *See Melgares v.*

*Sikorsky Aircraft Corp.*, 613 F. Supp. 2d 231, 245 (D. Conn. 2009).

### D. Neutral Factors

#### a. Trial efficiency

The Defendants maintain that a transfer to the Eastern District is necessary because the

Second Circuit has a "strong policy favoring the litigation of related claims in the same tribunal

in order" to conduct pretrial discovery "more efficiently, duplicitous litigation can be avoided,

thereby saving time and expense for both parties and witnesses, and inconsistent results can be

avoided." *K.M. v. Maclaren United States, Inc.* 10 Civ. 7942 (LTS) (RLE), 2011 WL 1900137,

at *10 (S.D.N.Y. Apr. 7, 2011) (citing *Wyndham Assocs. v. Bintliff*, 398 F. 2d 614, 619 (2d Cir.

1968)). The Defendants assert that Judge Brodie in the Eastern District has greater familiarity

with the facts of this case because she decided the case in *Reen*. The Defendants look to

*Williams*, where the court granted a transfer from the Southern District to the Eastern District of

New York because the pending action in the Southern District encompassed "similar legal and

factual issues, [and] involve[d] the same plaintiff." *Williams v. City of New York*, No. 03 Civ.

5342 (RWS), 2006 WL 399456, at *3 (S.D.N.Y. Feb. 16. 2006). In *Williams*, both suits filed by

the same plaintiff, were against "members of [the] D[epartment of Correction], and the City

anticipate[d] calling the same witnesses in its defense in both actions. As such, discovery

request in both cases [would] likely overlap . . . [t]hus, transferring the Southern District action

to the Eastern District. . . . [wa]s consistent with the goals of achieving judicial economy." *Id.* While *Reen* and the instant case also involve similar legal and factual issues, the Court is not convinced that achieving judicial economy will be advanced by a transfer.

The present action and *Reen* involve two different plaintiffs, distinguishing it from *Williams.* In addition, these cases are at distinct stages of litigation and will not result in an overlap in discovery requests. This matter remains in the preliminary stages of discovery while discovery in *Reen* has been concluded. Indeed the *Reen* matter is largely concluded; on September 25, 2018, Judge Brodie granted the Defendants' motion for summary judgement to all but one of the plaintiff's claims against only one defendant. (Defs.' Mem. Supp. Mot. Transfer Venue at 5.)

Saverese's counsel also advises that discovery here may result in a case theory that is substantially different than that in *Reen*. Additionally, Saverese's claim includes different Defendants, Youmans and Fransson, further distinguishing it from the matter in *Reen*. While the Court is not persuaded that these cases are completely distinguishable by the presence of two additional defendants and the potential development of distinct theories, the Court sees no reason to transfer for efficiency purposes to a District that has already concluded the related matter. *Cf. Hershman v. UnumProvident Corp.*, 658 F. Supp. 598, 602-603 (S.D.N.Y. 2009) ("There is also no significant difference between the docket conditions of the Southern district and the Eastern District that might lead to a more expeditious resolution of the dispute in one venue or another and justify a transfer on efficiency grounds . . . a transfer would if anything delay resolution of this dispute as a new court familiarized itself with the facts of this case.") The facts of this case are straightforward and the Court has adjudicated many cases involving tort claims against the City and NYPD officials. Thus the Court weighs the factor of judicial efficiency neutrally.

b.  Convenience of the Parties

It is undisputed that the locus of operative facts arose in the Eastern District of New York.  However, the Court finds that this factor alone is not sufficient to grant a transfer because "there is not much difference in convenience between the federal court in Manhattan and the federal court in Brooklyn."  *Leslie, 2012* WL 1744842 at *1; *see also Arce*, 2008 WL 277447, at *1.  The Southern and Eastern District courthouses are located less than three miles from each other, which virtually eliminates any inconvenience faced by parties in maintaining an action in the Southern District rather than the Eastern District of New York.  *See Benjamin v. City of New York*, 15 Civ. 2220 (KPF), 2015 WL 1632459 at *3 (S.D.N.Y. 2015); *see also Leslie*, 2012 WL 1744842 at *1; *Arce*, 2008 WL 2774447, at *1.  Accordingly, this District has weighed neutrally factors including convenience of the witnesses, location of relevant documents, convenience of the parties, the availability of process to compel unwilling witnesses, means of the parties and the forum's familiarity with governing law, when considering motions to transfer to and from both the Southern and Eastern District of New York.  *Williams*, 2006 WL 399456, at *3 (quoting *Ayala-Branch c. Tad Telecom, Inc.*, 197 F. Supp. 2d 13, 15 (S.D.N.Y. 2002)); *Tole v. Glenn Miller Prods., Inc.*, No. 12 Civ. 6660 (NRB), 2013 WL 4006134, at *2 (S.D.N.Y. Aug. 6, 2013); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007).  Here, consistent with those other holdings, the Court finds that such factors are neutral.

The Defendants have failed to demonstrate how litigating the matter in the Southern District rises to the level of inconvenience that justice would so require a transfer to the Eastern District of New York.  *See South Ogden CVS Store, Inc. v. Ambach*, 493 F. Supp. 374, 378 (S.D.N.Y. 1980).  (the "proximity of the Southern District of New York and the Eastern District

of New York" "substantially limits hardship faced by any of the parties in maintaining this action in the Eastern District of New York rather than the Southern District of New York").

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to transfer the case is DENIED. The Clerk of the Court is respectfully directed to terminate the motion. Doc. 32.

It is SO ORDERED.

Dated:    June 13, 2019
          New York, New York

Edgardo Ramos, U.S.D.J.